## Commonwealth v. Sutley

*Edward M. Bell,* for Commonwealth.
*Warren R. Keck Jr.,* for defendant.

ACKER, J., November 6, 1969.—This matter comes before this court upon a motion for a new trial and a motion in arrest of judgment after conviction of defendant for wantonly pointing a firearm at another person. Defendant contends that the court erred in instructing the jury that defendant need only point a deadly weapon in the direction of a person in order to be guilty of pointing a deadly weapon and in refusing to direct a verdict for defendant because of his alleged excessive intoxication at the time of the occurrence.

The bizarre facts which give rise to this crime commenced at about 11 p.m. on the night of July 7, 1969, when defendant appeared at a residence owned by his brother, Marion Sutley, and his grand-

mother, Marie Palmer, and knocked on the back-kitchen window. Sometime previously he had been directed out of the home and told that he could no longer reside there. The brother was seated at the kitchen table eating a sandwich. Upon opening the back door, he recognized defendant who wanted to know if he could stay there. The answer was no. Defendant replied, "If you don't want any trouble, you better open the door." His brother answered, "I don't want any trouble and I closed the door." He also locked it. He proceeded five or six feet back across the kitchen when he heard a crash behind him. In turning, he saw an arm coming through the kitchen door window. Being afraid of his brother, he started to run towards his room to get his large German shepherd police dog, but as he approached it he found that defendant had already gotten into the kitchen. He then ran out the front door to a neighbor and called the police. Defendant locked the door behind him.

About 15 or 20 minutes after defendant broke the glass and entered the home, the police arrived. During the entry, defendant cut himself severely which eventually required about 50 stitches. Prior to the arrival of the police, defendant secured his brother's 20-gauge Sears model pump gun. Chief Moldovan assigned Officer Robert Davis, of the Wheatland Police force, to stand by a front window and watch as he went to the front door. This door is of wooden frame with a window approximately eight by 10 inches in the center top at about eye level. The chief knocked at the door and found that it was locked. At about this time, defendant was coming from the kitchen to the living room with a butcher knife between his teeth and a shotgun in his hand. He was bleeding badly. The chief attempted to talk to defendant through the window in the door. Defendant responded, "I'll get

you this time, you fat bastard, and throwed the knife in my direction." The chief ducked. Upon raising again to look through the window, defendant pulled up the shotgun and pointed it at the door, but without sighting down the barrel. It was, however, firmly under his arm with barrel pointing at the door. The chief was asked whether it was aimed and he answered, "Right at me." The Chief tried to talk him into putting the gun down and opening the door, but, instead, defendant walked into the bedroom, turned on the high-fi player very loud and laid on the bed. At the slightest sound, he would jump up with the gun in his hand.

Finally, the police were able to coax the police dog out of the home and the chief and his officer entered. As they came into the bedroom, defendant was lying with his feet towards the door and gun next to him. Upon arriving approximately four feet from defendant, he opened his eyes and moved towards the gun. The chief jumped on the gun and secured it.

The chief testified that defendant was four or five feet from the front wall of the home at the time defendant pointed the shotgun at him. Officer Davis testified that defendant was a foot and a half or two feet from the wall at the time of the pointing. Therefore, one of the contentions raised by defendant in the trial through his attorney was that it would be impossible under Officer Davis's version for defendant to have actually shot and hit the chief because of the necessity of penetrating through the door and possibly a portion of the wall for the pellets to have reached him, assuming that the gun had been loaded. The court stated to the jury in its charge:

"Now, does that mean that you must be satisfied beyond a reasonable doubt that he would have hit the person? I say no, and I so charge you. It is only necessary that he point it at him in such a way that it would appear to you as reasonable jurors that he

was at least in the direction of the man that he was pointing at."

It is to be noted that defendant did not take a specific exception to this phase of the charge. Rather, he took only a general exception and an execption to the denial of his point for binding instruction. Counsel for defendant further stated, ". . . that is the extent of our exception." Defendant did not take the stand on his own behalf nor did he call any witnesses.

Where only a general exception is taken to a charge and the point contested by a motion for new trial was not brought to the court's attention during the charge, the matter will not be considered unless it was a fundamental error: Commonwealth v. Smith, 374 Pa. 220, 97 A.2d 25 (1953). Commonwealth v. Tonty, 178 Pa. Superior Ct. 447, 115 A.2d 833, cert. denied 76 S.Ct. 649, 350 U.S. 1005, 100 L.Ed. 868 (1955).

Despite the failure of defendant's counsel to make specific objection to the points now raised, and even though the alleged error would not begin to qualify as basic and fundamental because of the liberality of the courts to grant post-conviction relief for all matters which have not been previously decided by the trial court, the contentions of defendant are considered as if a proper exception had been taken.

The statute reads: "Whoever playfully or wantonly points or discharges a gun, pistol or other firearm at any other person, is guilty of a misdemeanor . . .": The Penal Code of June 24, 1939, P. L. 872, sec. 716, 18 PS §4716. The contention raised by defendant that the court erred in instructing the jury that the Commonwealth did not have to prove beyond a reasonable doubt that the chief would have, in fact, been struck by the pellet if the shotgun were fired is without judicial support by any case in Pennsylvania. It has, however, been held elsewhere that, ". . . it was not

necessary to prove that the pistol was loaded and that there was a present ability to commit an assault": Underhill v. State, 185 Ind. 587, 591, 114 N.E. 88, 89 (1916). Further:

"In the misdemeanor of pointing a gun there is but one element, the act of pointing, and no element of intention with respect to the purpose for which the weapon is pointed. . . . There is no ingredient of malice, no motive to injure. . . . The intentional act of pointing the gun constitutes the whole offense. . . . It is only necessary for the state to prove that the defendant intentionally or purposely pointed the gun at or towards the prosecuting witness, so as to exclude an inference that he did it unintentionally or accidentally": State v. Gam, 24 Del. 25, 74 Atl. 7 (1909).

Neither present ability to commit an assault nor present ability to see or harm the intended victim is an element of the offense: Lang v. State, 95 Ind. 114, 86 C.J. 64, note 13. It would appear that pointing a deadly weapon is the least of the various charges which can arise from the use of such a weapon toward or against the person or body of another. Certainly, if the gun had been loaded and discharged with injury having been inflicted upon the chief of police, defendant could have been charged with assault and battery,[1] aggravated assault and battery,[2] assault with intent to kill[3] and assault with intent to maim.[4] Certainly, if defendant was convicted of any of these potential charges, he would contend that the charge of pointing a deadly weapon

---

[1] The Penal Code of June 24, 1939, P. L. 872, sec. 708, 18 PS §4708.

[2] The Penal Code of June 24, 1939, P. L. 872, sec. 709, 18 PS §4709.

[3] The Penal Code of June 24, 1939, P. L. 872, sec. 710, 18 PS §4710.

[4] The Penal Code of June 24, 1939, P. L. 872, sec. 712, 18 PS §4712.

merged in the more serious charge and, therefore, he could not be sentenced on it similarly to that successfully contended in Commonwealth v. Gilliam, 89 D. & C. 354 (1954).[5] In the charge, this court likened the crime to that of an assault where a victim is put in apprehension of subsequent injury or death. Support for this position would appear to come from the use of the word "playfully" in the statute, which indicates the lack of mental element which is associated with pointing and aiming a weapon in such a manner as to assure that the victim would be struck if the weapon was discharged.

Defendant cites two cases for the proposition that the drafters of the statute really intended to include the word "aim" instead of "wantonly points".[6] In Coleman v. State, 94 Miss. 860, 48 So. 181, 182 (1909), a statute made it an offense to "point or aim a gun". This language was held to indicate that the legislature intended the words "point" or "aim" to be synonymous. Even so holding, the Court, however, stated that there was no error in allowing a conviction for

---

[5] In Commonwealth v. Morton, 212 Pa. Superior Ct. 228, 243 A.2d 211 (1968), defendant was found guilty of assault with intent to kill and wantonly pointing a deadly firearm and was sentenced concurrently. On appeal, he contended that the lesser offense of pointing a deadly weapon merged. This argument was apparently dismissed by affirmation in a per curiam opinion. In a dissent, however, by Hoffman J., joined by Spaulding, J., it was stated, page 231: "A conviction for the misdemeanor requires no more than pointing or discharging a gun at another person. Thus, since the elements of the misdemeanor are also necessary for proof of the felonious crime, the lesser offense merges into the more serious one."

[6] This statute was originally passed on May 8, 1876, P. L. 146, sec. 1, and has read substantially the same to the present time with the exception that the fine of $1,000 previously authorized has been reduced to $500 and that the penalty originally was at the discretion of the court, whereas it has now been made one year or both.

either if a person is informed by a statute that there are a number of things which he may not legally do and he perpetrates one of the several acts prohibited ". . . he violates it equally by doing one of the things."

In the instant case, the chief of police testified "after he throwed the knife, he said, 'I'll get you this time, you fat bastard' in this manner and aimed it at me. Question: And is there any question, was it aimed at any other portion of the room or was it aimed right at you? Answer: Right at me." Therefore, even if the statute is to be interpreted that it requires that the weapon be aimed, the testimony clearly fits within such a strained construction of the statute.

Defendant cites Buchanan v. State, 25 Okla. Cr. 198, 205, 219 Pac. 420, 423 (1923), for the proposition, that "While the word 'point' is not entirely synonymous with the word 'aim,' in that 'aim' denotes direction towards some minute point in an object, while 'point' implies direction toward the whole object, it is apparent, we think, that the statute was never intended to include inadvertent or unintentional acts of pointing." However, immediately prior to that quotation the court holds: "There must have been an intention on the part of the defendant to *point* the gun at another before a conviction could result." (Italics supplied.) Therefore, neither of the cases cited by defendant support any ground for new trial in this case.

Did the court err in failing to direct a verdict in favor of defendant solely on the grounds that he was so intoxicated that he could not form an intent to commit this offense?

This court gave defendant the benefit of two large doubts. First, it submitted the question of intoxication to the jury when it is doubtful if this offense calls for any specific intent, as previously noted in this opinion, permitting intoxication to be considered. Further, it would appear the defense of intoxication is avail-

able only to the defendant who is willing to establish his defense by a fair preponderance of the evidence: Commonwealth v. Thompson, 381 Pa. 299, 113 A.2d 274 (1955). However, in order to give defendant every benefit of the doubt, there was no burden of proof placed upon him.

Defendant failed to produce any case which supported the position that a directed verdict can be entered for defendant on the grounds of intoxication. As stated in Commonwealth v. Samuel Jones, 355 Pa. 522, 532, 50 A.2d 317 (1947), "At most, therefore, the fact of intoxication, if introduced by a defendant at the trial of an indictment for murder, becomes an issue for the trier of the facts to determine. And their findings in such regard, as in the case of all other relevant and material facts, are to be accorded both the competency and weight ordinarily ascribable to a jury's verdict."

So in this case defendant had more than he was entitled to by law submitted to the jury on the question of intoxication. That issue was resolved against him. This court can do no more.

## ORDER

And now, November 6, 1969, defendant's motion for new trial and his motion in arrest of judgment are denied.